**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

IN RE LETTER OF REQUEST      )
FROM HUNGARY                 )
IN THE MATTER OF             )    Misc. No. 08-
NAGY                         )

**GOVERNMENT'S MEMORANDUM OF LAW
IN SUPPORT OF APPLICATION FOR ORDER**

This memorandum of law is submitted in support of the Application for an Order pursuant to Title 28, United States Code, Section 1782, in order to execute a letter of request from Hungary. A copy of the translation is attached.

FACTUAL BACKGROUND:

This investigation is being conducted by the Hungarian authorities who are investigating a case of alleged fraud.

EVIDENCE SOUGHT:

The Hungarian authorities seek information from a company which resides in this District and the Delaware Secretary of State's Office. Thus, the information the Hungarians seek may be obtainable here. The authority for this Court to accede to this request is contained in Title 28, United States Code, Section 1782, which states in part:

> (a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other

thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

The proper criteria for determining whether the court should exercise its discretion in favor of executing the request are outlined in *In Re Request for Judicial Assistance from the Seoul District Criminal Court*, 555 F.2d 720, 723 (9th Cir. 1977) (citation omitted):

> Under the statute the only restrictions explicitly stated are that the request be made by a foreign or international tribunal, and that the testimony or material requested be for use in a proceeding in such a tribunal.... [and] that the investigation in connection with which the request is made must relate to a judicial or quasi-judicial controversy.

Moreover, "(t)he judicial proceeding for which assistance is sought ... need not be pending at the time of the request for assistance; it suffices that the proceeding in the foreign tribunal and its contours be in reasonable contemplation when the request is made." *In Re Letter of Request from the Crown Prosecution Services of the United Kingdom*, 870 F.2d 686, 687 (D.C. Cir. 1989).

The letter of request in this case shows that the information sought is for use in such proceedings in Hungary and hence the request comes well within those circumstances contemplated by Congress in expanding the Federal Courts' authority to act in such matters. *In Re Letter of Request from the Crown Prosecution Service of the United Kingdom*, 870 F.2d 686, 689-91 (D.C. Cir. 1989); *In Re Letters Rogatory from the Tokyo District, Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976). Therefore, I ask this Court to honor the request for assistance.

The reception of letters of request and the appointment of a Commissioner to execute them are matters customarily handled *ex parte,* and persons with objections to the request raise those objections by moving to quash any subpoenas issued by the Commissioner. *Id.*

**WHEREFORE,** the United States requests that the Court issue an Order, in the form, appended hereto, appointing a Commissioner in order to execute the request for assistance.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

BY: _____
David L. Hall
Assistant U.S. Attorney
1007 N. Orange Street
Wilmington, DE   19801
(302) 573-6277

Dated: 2 JUN 08

# ORSZÁGOS FORDÍTÓ ÉS FORDÍTÁSHITELESÍTŐ IRODA

National Office for Translations and Attestations Company Limited
Nationale Amtsstelle für Übersetzungen und Beglaubigungen Aktiengesellschaft

Акционерное общество Венгерское Бюро переводов и заверений
Bureau National de Traductions et de Legalisations Société Anonyme

H-1062 BUDAPEST, BAJZA U. 52.



Translation from Hungarian

CHIEF PROSECUTOR'S OFFICE

Investigation Supervision and Indictment Preparation Division

1055 Budapest, Markó u. 16

Telephone: 354-5500

Number NF.8915/2005/2-II.

Attachment: request for assistance in a legal matter

**To: the International Affairs Office**

**Criminal Department**

**Department of Justice**

**The United States of America**

**Washington DC.20530**

To whom it may concern,

In connection with criminal case number 136-1333/2005 which is being conducted by the Budapest Police Headquarters against NAGY József for the felony of fraud, I hereby ask that, on the basis of Article 1(1) and Article 1(2)(a)-(b) of the Convention on mutual assistance in criminal matters between the government of the Republic of Hungary and the government of the United States of America which was signed in Budapest on the 1st day of the month of December in the year 1994, you

2

kindly offer your legal assistance in accordance with petition number B.10.668/2005/2-I of the Public Prosecutor's Office of the 5th-13th Districts of Budapest which is attached hereto. -------------
I ask that you kindly send us the documents which are produced in the course of fulfilling this request. --------------------------------------------
Further information regarding this matter may be obtained via fax number 36-1-3534-798. -------------
I would like to take this opportunity of expressing my great esteem for the Department of Justice of the United States of America. ----------------
Budapest, on the 1st day of the month of March in the year 2006. ------------------------------------
Yours sincerely: ------------------------------------
illegible signature ---------------------------------
Dr. MOLNÁR Ervin, Public Prosecutor, Deputy Head of Division ---------------------------------------
Circular stamp: CHIEF PROSECUTOR'S OFFICE, INVESTIGATION SUPERVISION AND INDICTMENT PREPARATION DIVISION, Budapest-3 ------------------

30369/2006
The Hungarian National Office for Translations and Attestations Co. Ltd. hereby officially certifies that this translation is in full conformity with the original document, or the passage(s) marked therein, attached hereto.
Budapest, 06. 04. 2006

for the Director General



## ORSZÁGOS FORDÍTÓ ÉS FORDÍTÁSHITELESÍTŐ IRODA

National Office for Translations and Attestations Company Limited
Nationale Amtsstelle für Übersetzungen und Beglaubigungen Aktiengesellschaft
Акционерное общество Венгерское Бюро переводов и заверений
Bureau National de Traductions et de Legalisations Société Anonyme

H-1062 BUDAPEST, BAJZA U. 52.

<u>Translation from Hungarian</u>

**Public Prosecutor's Office of the 5th and 13th Districts of Budapest** ----------------------

B.10.668/2005/2-I. ----------------------------

**To: The Department of Justice** -------------------

**The United States of America** --------------------

<u>Washington</u> ----------------------------------

**To whom it may concern,** -------------------------

On the basis of Article 1(1) of Act LX of 1997 (the Act on mutual assistance in criminal matters) between the government of the Republic of Hungary and the government of the United States of America which was signed in Budapest on 1st December 1994, I hereby ask that you kindly offer your legal assistance in criminal case number 136-1333/2005 which is being conducted by the Property Protection Department of Criminal Division number II of the Budapest Police Headquarters against NAGY József for the felony of fraud causing significant damage, committed cumulatively and in a business-like manner. --------------------------------------

The following statement of facts can be established on the basis of the available data: --------

On the basis of an investment contract dated 25th February 2003, NAGY József, suspect, received a

2

total of 9,000,000 forints in two instalments, dated the 25th day of February 2003 and the 28th day of March 2003 respectively, from Doctor PONGRÁCZ Tibor, injured party, in order that he might use this amount for the import of high-value cars from the United States of America; these would then be sold in Hungary for such large profits that the capital component could be repaid to the injured party together with the profit as determined in the contract. --------------------------

On the 4th day of September 2003, NAGY József, suspect, received a further 2,000,000 forints from the injured party – claiming that he was delivering a used HONDA Accord EX-V6 car manufactured in 2003 which he had bought with the money he had received up until the 30th day of October 2003, and that the car was on its way – stating that the money was needed in order to pay the customs charges for the car. ------------------------------

NAGY József did not deliver the car to the injured party by the 30th day of October 2003, nor has he done so since then. He has not returned the money which he received. The suspect kept the injured party in error with regard to his intention of fulfilling the provisions of the contract; he

**ORSZÁGOS FORDÍTÓ ÉS FORDÍTÁSHITELESÍTŐ IRODA**

National Office for Translations and Attestations Company Limited
Nationale Amtsstelle für Übersetzungen und Beglaubigungen Aktiengesellschaft

Акционерное общество Венгерское Бюро переводов и заверений
Bureau National de Traductions et de Legalisations Société Anonyme

H-1062 BUDAPEST, BAJZA U. 52.

3

promised on a number of occasions to pay back the money, but he failed to appear for the meetings which were scheduled. ------------------------------
The commission of the criminal act resulted in damages amounting to 11,000,000 forints to the injured party. This amount has not been recovered. --
On the pretext of being able to obtain spare car parts at discounted prices from the United States of America, NAGY József, suspect, received, on the 4th day of December 2003, 2,500,000 forints as an advance from SZIKSZAI István, who was acting as representative of the SZIKI-CAR Korlátolt Felelősségű Társaság, injured party, of the 13th District of Budapest, Újpalotai utca 8, on behalf of the BENS-UNION Kereskedelmi Korlátolt Felelősségű Társaság. ----------------------------------------
On the 10th day of December 2003 and the 27th day of February 2004, the suspect received a further 1,200,000 forints from SZIKSZAI István in order to settle the advance, giving as his reasons the increased cost of customs clearance and a rise in the amount of general turnover tax. ---------------
NAGY József did not deliver the spare parts which had been requested to the SZIKI-CAR Korlátolt Felelősségű Társaság, nor did he return the money he

4

had received from SZIKSZAI István, in spite of being requested to do so; for a time he led SZIKSZAI István to believe that he was willing and able to do so, but then he could not be contacted by the latter. --------------------------------------------

The suspect never intended to deliver spare parts to the SZIKI-CAR Korlátolt Felelősségű Társaság; his aim was purely to obtain the money. ------------

The suspect caused damage amounting to 3,700,000 forints to the SZIKI-CAR Korlátolt Felelősségű Társaság, injured party. This amount has not been recovered. ---------------------------------------------

The actions of NAGY József, accused, are eligible for the establishment of 2 counts of the felony of fraud causing significant damage, committed cumulatively and in a business-like manner, in violation of Section 318(1) of Act IV of 1978 (the Act on the Criminal Code) and - taking into consideration Section 318(2)(c) - classifying as such according to Section 318(6)(b) of the same. The punishment for this criminal act is a period of imprisonment of from two years' to eight years' duration. ----------------------------------------------

According to information provided by the accused, the spare parts which were ordered for the SZIKI-



**ORSZÁGOS FORDÍTÓ ÉS FORDÍTÁSHITELESÍTŐ IRODA**

National Office for Translations and Attestations Company Limited
Nationale Amtsstelle für Übersetzungen und Beglaubigungen Aktiengesellschaft
Акционерное общество Венгерское Бюро переводов и заверений
Bureau National de Traductions et de Legalisations Société Anonyme

H-1062 BUDAPEST, BAJZA U. 52.

5

CAR Korlátolt Felelősségű Társaság were purchased by the StarGate International LLC address: 1220 Northstreet Rd. Wilmington DE 19801 USA, representative Ivonne CORDOBA) from the DEEL SAAB company (address: 3650 Bird Road Miama, Florida 33133 USA). The spare parts which were purchased in this way were then transported to Germany by American Freight Line Southeast Inc. (address: 671 Northwest 4 Ave. Ft. Lauderdale Florida 33331, telephone/fax: 954 767 3369). ----------------------------

In order that the defence of the accused might be examined, I ask that you kindly question as witness the representative of StarGate International L.L.C. with respect to the following circumstances: ----------------------------

- how long have you been connected with NAGY József and his company, the BENS-UNION Kereskedelmi Korlátolt Felelősségű Társaság? ---------
- did you receive, after the 4th day of September 2003, a commission from NAGY József or the BENS-UNION Kereskedelmi Korlátolt Felelősségű Társaság to purchase a Honda passenger car for NAGY József or one of the clients of the BENS-UNION Kereskedelmi Korlátolt Felelősségű Társaság? ---------
- if so, did they purchase the car? and if the

6

purchase took place, when, where, from whom and for what amount was the car obtained?-------------
- what happened to the car following the purchase? where was it transported to?----------------------
- did NAGY József or the BENS-UNION Kereskedelmi Korlátolt Felelősségű Társaság settle the counter-value of the car? If so, when and how was this done; if nor, what was the reason for this?-------
- did you receive, in or after December of 2003, an order for the purchase of the Saab car parts which appear in the enclosed list from NAGY József or the BENS-UNION Kereskedelmi Korlátolt Felelősségű Társaság?---------------------------------------
- if so, did you purchase the spare parts? If he purchase did take place, when, where, from whom and for what amount were they obtained?-----------
- what happened to the spare parts following the purchase? Where were they transported to?---------
- did NAGY József or the BENS-UNION Kereskedelmi Korlátolt Felelősségű Társaság settle the counter-value of the spare parts? If so, when and how? If not, what was the reason for this?----------------
Would you please also question the representative of Deel Saab as a witness, with regard to the following circumstances:-------------------------------

**ORSZÁGOS FORDÍTÓ ÉS FORDÍTÁSHITELESÍTŐ IRODA**

National Office for Translations and Attestations Company Limited
Nationale Amtsstelle für Übersetzungen und Beglaubigungen Aktiengesellschaft
Акционерное общество Венгерское Бюро переводов и заверений
Bureau National de Traductions et de Legalisations Société Anonyme

H-1062 BUDAPEST, BAJZA U. 52.

7

- did StarGate International L.L.C. purchase, in or after December of 2003, the Saab spare parts which appear on the enclosed list on behalf of NAGY József or the BENS-UNION Kereskedelmi Korlátolt Felelősségű Társaság? ---------------------

- if so, when and for how much? -------------------

- what happened to the spare parts? Were they sent on, and if so, when and where to? -----------------

Would you please also question the representative of American Freight Line Southeast Inc. as a witness, with regard to the following circumstances: -

- were you, in or after December of 2003, commissioned by the StarGate International L.L.C. company to deliver to Germany the Saab spare parts which appear on the enclosed list on behalf of NAGY József or the BENS-UNION Kereskedelmi Korlátolt Felelősségű Társaság? ---------------------

- if so, where did the transport take place from, and when did it take place? ------------------------

- where did you take the goods? -------------------

- was it necessary to transport the goods back to the United States of America a short time later? If so, where and to whom were they transported, and what was the reason for this? ------------------

- where are the goods now, and who disposes over

8

them?----------------------------------------------
Would you please advise the witnesses before they are questioned that, on the basis of Section 82(1)(a) and (b) of Act XIX of 1998 (the Act on the Penal Procedure of the Republic of Hungary), a person may refuse to make a witness deposition if they are a relative of the accused or if, by so doing, they would be accusing themselves or a relative of their of committing a criminal act with regard to the question in hand, even if they have not refused to make a deposition with regard to a relationship as a relative.------------------
In addition to questioning the witnesses I ask that you kindly seize, on the basis of the decisions which are attached hereto, the invoices, vouchers, letters and other documents connected to the orders, the acquisition of the car and spare car parts, and the financial transactions which may have taken place in the course of the transport (shipping) and the completion of the transactions. Would you also please give one copy of the decision to the representative of the company who is present when the seizure is carried out.-------
I would be grateful if you could send to this office all the documents which are produced in the

**ORSZÁGOS FORDÍTÓ ÉS FORDÍTÁSHITELESÍTŐ IRODA**

National Office for Translations and Attestations Company Limited
Nationale Amtsstelle für Übersetzungen und Beglaubigungen Aktiengesellschaft
Акционерное общество Венгерское Бюро переводов и заверений
Bureau National de Traductions et de Legalisations Société Anonyme

H-1062 BUDAPEST, BAJZA U. 52.

9

course of fulfilling the request for legal assistance, as well as the documents which are seized. —
I would like to take this opportunity of expressing my great respect for the Department of Justice of the United States of America. ——————

**Budapest, 9th February 2006.** ——————

Yours sincerely, ——————

illegible signature ——————

**Dr. BARTHA János** ——————

**Head Public Prosecutor of the District** ——————

Circular stamp: Public Prosecutor's Office of the 5th and 13th Districts of Budapest-9 ——————

30369/2006
The Hungarian National Office for Translations and Attestations Co. Ltd. hereby officially certifies that this translation is in full conformity with the original document, or the passage(s) marked therein, attached hereto.
Budapest,   06. 04. 2006

for the Director General

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

IN RE LETTER OF REQUEST )
FROM HUNGARY )
IN THE MATTER OF ) Misc No. 08-
NAGY )

<u>ORDER</u>

  Upon application of the United States of America; and upon examination of a letter of request from Hungary whose authorities are seeking certain testimony and information from individuals which may be found in this District, for use in a judicial proceeding in Hungary and the Court being fully informed in the premises, it is hereby

  **ORDERED**, pursuant to Title 28, United States Code, Section 1782, that David L. Hall, Assistant United States Attorney, hereby is appointed as Commissioner of this Court and is hereby directed to execute the letter of request from Hungarian authorities as follows:

  1. to take such steps as are necessary, including issuance of commissioner's subpoenas to be served on persons within the jurisdiction of this Court, to collect the evidence requested;

  2. provide notice with respect to the collection of evidence to those persons identified in the requests as parties to whom notice should be given (and no notice to any other party shall be required);

3. adopt procedures to collect the evidence requested consistent with its use as evidence in a proceeding before a Court in Hungary, which procedures may be specified in the request or provided by the Hungarian authorities;

4. seek such further orders of this Court as may be necessary to execute this request; and

5. certify and submit the evidence collected to the Office of International Affairs, Criminal Division, United States Department of Justice, or as otherwise directed by that office for transmission to the Hungarian authorities.

IT IS FURTHER ORDERED that, in collecting the evidence requested, the Commissioner may be accompanied by persons whose presence or participation is authorized by the Commissioner.

Dated: This _____ day of _____, 2008.

_____
United States District Court Judge

3. adopt procedures to collect the evidence requested consistent with its use as evidence in a proceeding before a Court in Hungary, which procedures may be specified in the request or provided by the Hungarian authorities;

4. seek such further orders of this Court as may be necessary to execute this request; and

5. certify and submit the evidence collected to the Office of International Affairs, Criminal Division, United States Department of Justice, or as otherwise directed by that office for transmission to the Hungarian authorities.

IT IS FURTHER ORDERED that, in collecting the evidence requested, the Commissioner may be accompanied by persons whose presence or participation is authorized by the Commissioner.

Dated: This _____ day of _____, 2008.

_____
United States District Court Judge